1  STEPHEN H. SILVER, ESQ.;  State Bar No. 038241
   shsilver@shslaborlaw.com
2  RICHARD A. LEVINE, ESQ.;  State Bar No. 091671
   rlevine@shslaborlaw.com
3  SILVER, HADDEN, SILVER, WEXLER & LEVINE
   1428 Second Street, Suite 200
4  P. O. Box 2161
   Santa Monica, CA 90407-2161
5  (310) 393-1486 Telephone
   (310) 395-5801 Fax
6
   Attorneys for Plaintiff, WILLIAM J. HUNT
7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  WILLIAM J. HUNT,                    )  Case No. SACV 07-705-MMM
                                        )  (MLGx)
12              Plaintiff,              )
                                        )  **PLAINTIFF WILLIAM J. HUNT'S**
13        vs.                           )  **TRIAL BRIEF**
                                        )
14  COUNTY OF ORANGE; MICHAEL S.        )
    CARONA, Sheriff-Coroner for the     )  Trial Date:      October 13, 2009
15  County of Orange; DOES I - XX,      )  Time:            8:30 a.m.
    Inclusive,                          )  Courtroom:       780 Roybal
16                                      )  Hon. Margaret M. Morrow
                Defendants.             )
17                                      )  [Complaint filed 6/18/07]
                                        )
18                                      )
                                        )
19  _____ )

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

_____
                PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    LEGAL STANDARD OF FIRST AMENDMENT
       RETALIATION CLAIMS BASED UPON POLITICAL
       EXPRESSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   THE NARROW POLICYMAKING EXCEPTION TO THE
       FIRST AMENDMENT SHOULD NOT BE APPLIED IN
       THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.    DEFENDANTS WILL NOT BE ABLE TO SATISFY
       THEIR BURDEN THAT PLAINTIFF WAS A
       POLICYMAKER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     DEFENDANTS CANNOT ESTABLISH QUALIFIED
       IMMUNITY IN THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.    DEFENDANTS CANNOT ESTABLISH THE
       APPLICATION OF THE HATCH ACT IN THIS CASE OR
       BAR RECOVERY BY PLAINTIFF ON ANY REMAINING
       AFFIRMATIVE DEFENSES. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Page**

### *Federal Cases*

*McEntee v. Merit Systems Protection Board*, 404 F.3d 1320. . . . . . . . . . . . . . . 14

*Bardzik v. County of Orange*, 605 F.Supp.2d 1076 (2009). . . . . . . . . . . . . . . . 8, 9

*Branti v. Finkel* 445 U.S. 507 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Buckley v. Valeo*, 424 U.S. at 64-65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Carey v. Brown*, 447 U.S. 455 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cohen v. California*, 403 U.S. 15 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Connick v. Myers,* 461 U.S. 138 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*DiRuzza v. County of Tehama*, 206 F.3d 1304 (9th Cir. 2000). . . . . . . . . . . . . . 9-12

*Elrod v. Burns*, 427 U.S. 347 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-10

*Garrison v. Louisiana*, 379 U.S. 64 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982). . . . . . . . . . . . . . 6

*Johnson v. Multnomah County*, 48 F.3d 420 (9th Cir. 1995) . . . . . . . . . . . . . 5, 8, 9

*Keyser v. Sacramento Unified School District*, 265 F.3d 741 (9th Cir. 2001). . . . . 5

*Kusper v. Pontikes*, 414 U.S. at 58. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1982). . . . . . . . . . . . . . . . . 5, 7

*Mills v. Alabama*, 384 U.S. 214. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*NAACP v. Alabama*, 357 U.S. 449 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). . . . . . . . . . . . . . . 6, 14

*New York Times v. Sullivan*, 376 U.S. 254 (1964). . . . . . . . . . . . . . . . . . . . . . . 5

*Perry vs. Sindermann*, 408 U.S. 593 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pickering v Board of Education*, 391 U.S. 563 (1968). . . . . . . . . . . . . . . . . . . . . 5

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). . . . . . . . . . . . . . . 6

*Roth v. Veteran's Administration*, 856 F.2d 1401 (9th Cir. 1988). . . . . . . . . . . . . 5

*Settlegood v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004). . . . . . . . . . 5

*Speiser vs. Randall*, 357 U.S. 513 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF

1 | *Stromberg v. California,* 283 U.S. 359 (1931). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2 | *Thomas v. Carpenter*, 881 F.2d 828 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . 10, 13

3 | *Thornhill v. Alabama,* 310 U.S. 88 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4 | *Ulrich v City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002). . . . . . . . 4

### Federal Statutes

7 | 42 United States Code, section 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 14

8 | 5 United States Code, section 1501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF

## I.    **INTRODUCTION.**

This is an action brought by Plaintiff William J. Hunt against Defendants County of Orange and Michael Carona arising from Defendants' violation of Plaintiff's First Amendment right under the United States Constitution as the result of retaliation against Plaintiff for the exercise of his constitutionally protected speech during his 2005-2006 election campaign for Orange County Sheriff-Coroner against then-incumbent Sheriff Michael Carona, and in retaliation for Plaintiff's participation in political activities during that election in violation of 42 United States Code, section 1983.

The evidence in this case will demonstrate that Plaintiff was an employee of the Orange County Sheriff's Department for approximately 21 years and during such a distinguished career was promoted through the ranks of Deputy, Investigator, Sergeant and Lieutenant. Commencing in May 2003, Plaintiff was assigned by the Sheriff's Department as the Chief of Police Services (also referred to as Police Services Chief) for the City of San Clemente until his removal from said assignment and subsequent disciplinary action.

During Plaintiff's assignment as Chief of Police Services for the City of San Clemente, he was responsible for managing the delivery of law enforcement services provided to that community within the confines of the Sheriff's Department policies.

As Chief of Police Services, Plaintiff was supervised by the Captain of South Operations Division who similarly supervised numerous other Lieutenants assigned as Chiefs of Police Services in other cities contracting with the County for law enforcement services. The Captain of South Operations was subordinate in the organizational structure of the Sheriff's Department to the Assistant Sheriff and Sheriff in ascending order.

Plaintiff, as a Lieutenant assigned to Chief Police Services, had no authority to create Sheriff's Department policy, nor authority to revise policy, nor to

-1-
PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF

1  formulate operating policies.  Plaintiff did not have discretion in determining

2  implementation of policies as he would have no authority to refrain from enforcing

3  the Sheriff's Department policies.  A Chief of Police Services, similar to any other

4  employee of the Sheriff's Department, would have no discretion to bind the Sheriff

5  to any subject matter regarding law enforcement services, nor otherwise speak for

6  the Sheriff, unless specifically so authorized or directed through the chain of

7  command. Plaintiff did not have the authority to directly advise the Sheriff.

8       Commencing in or about May, 2005, Plaintiff announced his candidacy for

9  the office of Sheriff-Coroner for the County of Orange in which he would be

10  challenging the incumbent Sheriff-Coroner, Defendant Michael Carona.  During the

11  course of the 2005-2006 political campaign, Plaintiff issued public statements,

12  radio addresses, press releases, and disseminated campaign literature on important

13  matters of public concern, including:  Carona's performance of duties as Sheriff,

14  relevant law enforcement issues in the community, and proposals for an improved

15  Sheriff's Department under new leadership.

16       Plaintiff's campaign statements resulted in no disruption in his position as

17  Chief of Police Services, no complaints by the administration of the City of San

18  Clemente, nor by the public, nor any complaints by any of the Lieutenants assigned

19  as Chief of Police Services in the Orange County Sheriff's Department.

20       Although the Defendants were fully aware during the campaign of Plaintiff's

21  criticism of the Sheriff's Department/Carona and proceeded to undertake an

22  investigation, the Sheriff's Department did not advise Plaintiff of their investigation

23  nor that the Department of Professional Standards Division had been collecting

24  documentation from early 2005 on Plaintiff's campaign, nor otherwise advise

25  Plaintiff that he was allegedly committing misconduct concerning campaign

26  statements.

27       On June 7, 2006, the day following Defendant Carona's prevailing in the

28  election, Plaintiff was placed by Defendants on administrative leave pending a

1  personnel investigation concerning statements expressed during his 2005-2006

2  candidacy for the office of Sheriff-Coroner.

3      On or about October 31, 2006, following a five (5) month placement on

4  administrative leave pending investigation, Plaintiff was served a Notice of Pending

5  Demotion wherein Defendants proposed to demote him from the position of

6  Lieutenant to the rank of Deputy Sheriff II based upon violation of the

7  Department's Manual of Rules and Regulations respecting the content of his

8  campaign communications.  Thereafter, on or about December 22, 2006, Plaintiff

9  was served a Notice of Demotion by Defendants in which Plaintiff was to be

10  demoted from the position of Lieutenant to the rank of Deputy Sheriff II, effective

11  December 26, 2006 (3 rank demotion) and reassigned from the position of Police

12  Services Chief for the City of San Clemente.  The Notice of Demotion sustained all

13  violations of the Department's Rules and Regulations and all supporting grounds

14  alleged within the Notice of Pending Demotion, without any modifications.

15      The evidence at trial  will also demonstrate that during the course of the

16  political campaign, Plaintiff and numerous Sheriff Department employees

17  endorsing his candidacy, were the subject of investigation and retaliation by reason

18  of the exercise of First Amendment rights.

19      The Defendants' imposition of Plaintiff's disciplinary demotion resulting in

20  significant salary reduction, diminution of benefits and other conditions of

21  employment, in addition to the personal and professional humiliation and indignity

22  caused from the removal of Plaintiff from his duties as Police Services Chief and

23  his demotion, resulted in his constructive discharge by resignation on December 22,

24  2006.

25      Struggling to justify such obvious retaliation against Plaintiff for the exercise

26  of speech during his participation in the election campaign, Defendants characterize

27  Plaintiff as a "policymaker" and attempt to seek refuge in the narrow exception to

28  ///

1  First Amendment protection of which Plaintiff contends will not be established by

2  the evidence at trial.

3      Furthermore, Defendants in this case will not be able to demonstrate that any

4  legitimate interest of the Defendants in the effective performance of the Department

5  outweighed Plaintiff's interest in commenting on matters of public concern nor that

6  the rules and regulations which form the basis of the administrative action against

7  Plaintiff can be constitutionally enforced as applied to the speech in this case.

8

9  **II.    LEGAL STANDARD OF FIRST AMENDMENT RETALIATION**

10      **CLAIMS BASED UPON POLITICAL EXPRESSION.**

11      In a claim under 42 U.S.C, 1983 for retaliation for the exercise of right of

12  First Amendment, a Plaintiff must demonstrate that: 1) he was subjected to an

13  adverse employment action, 2.) he engaged in speech that was constitutionally

14  protected because it touched on a matter of public concern, and 3.) the protected

15  expression was a substantial motivating factor for the adverse action. (*Ulrich v City*

16  *and County of San Francisco*, 308 F.3d 968, 976 (9th Cir. 2002).)

17      In this case, the evidence will be undisputed that Plaintiff was subject to an

18  adverse employment action in the form of a 3-rank demotion from Lieutenant to

19  Deputy Sheriff II and reassignment from his position as a Chief of Police Services

20  for the City of San Clemente. In addition, the subject matter of Plaintiff's campaign

21  statements on which the disciplinary action were based were unquestionably

22  matters of public concern to the electorate during the election campaign for Sheriff.

23  Lastly, it will be undisputed that the protected expression of Plaintiff in the form of

24  campaign statements was a substantial, (in fact exclusive) motivating factor for the

25  adverse action.

26      Once a public employee has shown that he was retaliated against for the

27  exercise of his First Amendment right, the burden shifts to the employer to

28  demonstrate that its legitimate interest as an employer in promoting the efficiency

-4-

1   of public services outweighed the employee's interest in commenting on matters of

2   public concern. (*Pickering v Board of Education*, 391 U.S. 563, 568 (1968).)

3       In the instant case the Defendants will not be able to satisfy its burden of

4   demonstrating that the Plaintiff's speech interfered with his duties as Chief of

5   Police Services, impaired discipline in the Department or obstructed the routine

6   operations of the Sheriff's Department. The injury to legitimate governmental

7   interest must be actual, substantial and material in order to outweigh the interest in

8   communicating on matters of public concern. (*Roth v. Veteran's Administration*,

9   856 F.2d 1401, 1407 (9th Cir. 1988).)

10      Impact on employees' morale, interference with close working relationships

11  at work, or the undermining of relationships with co-workers or subordinates are

12  not sufficient to establish injury to governmental interests as a result of the

13  employee's exercise of free speech. (*Johnson v. Multnomah County*, 48 F.3d 420,

14  427 (9th Cir. 1995); *Keyser v. Sacramento Unified School District*, 265 F.3d 741,

15  748 (9th Cir. 2001); *Settlegood v. Portland Public Schools*, 371 F.3d 503, 514 (9th

16  Cir. 2004).)

17      In *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1982), this Circuit

18  addressed the crucial importance of the First Amendment to permit the public to

19  decide issues and viewpoints as relating to the functioning of government as

20  follows:

21          It is axiomatic that "speech concerning public affairs is more

22          than self-expression; it is the essence of self-government."

23          *Garrison v. Louisiana, 379 U.S. 64, 74-75, 13 L.Ed 2d 125, 85*

24          *S.Ct. 209 (1965). See also Mills v. Alabama, 384 U.S. 214, 218-*

25          *219, 16 L.Ed.2d 484, 86 S.Ct. 1434; New York Times v.*

26          *Sullivan, 376 U.S. 254, 269-70, 11 L.Ed.2d 686, 84 S.Ct. 710*

27          *(1964); Stromberg v. California, 283 U.S. 359, 369, 51 S.Ct.*

28          *532, 75 L.Ed. 1117 (1931).* As the Supreme Court has recently

-5-

affirmed, speech on public issues occupies the "highest rung of the hierarchy of *First Amendment* values," and is entitled to special protection. *NAACP v. Claiborne Hardware Co., 458 U.S. 886, 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215 (1982). See also Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Carey v. Brown, 447 U.S. 455, 467, 65 L.Ed.2d 263, 100 S.Ct. 2286 (1980).*

. . . [One] of the fundamental purposes of the *first amendment* is to permit the public to decide for itself which issues and viewpoints merit its concern. *See, e.g., Cohen v. California, 403 U.S. 15, 24, 29 L.Ed.2d 284, 91 S.Ct. 1780 (1971).*

The "expressly guaranteed freedoms" of the *first amendment* "share a common core purpose of assuring freedom of communication on matters relating to the functioning of government." *Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575, 65 L.Ed.2d 973, 100 S.Ct. 2814 (1980)* (plurality opinion). *See also Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 2619 73 L.Ed.2d 248 (1982).* Speech by public employees may be characterized as not of "public concern" when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies. *See Connick.* On the other hand, speech that concerns "issues about which information is needed or appropriate to enable the members of society" to make informed decisions about the operation of their government merits the highest degree of *first amendment*

1    protection. *Thornhill v. Alabama, 310 U.S. 88, 120, 84 L.Ed.*

2    *1093, 60 S.Ct. 736 (1946) (footnote omitted)."*

3    (*McKinley, supra*, 705 F.2d at pp. 1113-1114.)

4

5    ### III.  THE NARROW POLICYMAKING EXCEPTION TO THE

6    ### FIRST AMENDMENT SHOULD NOT BE APPLIED IN THIS

7    ### CASE.

8    A predicate for the application of the policymaking exception is that First

9    Amendment rights may be required to yield to the State's *vital interest* in

10   maintaining governmental effectiveness and efficiency. (*Branti v. Finkel* 445 U.S.

11   507, 517, 100 S.Ct. 1287 (1980).) In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673

12   (1976), the United States Supreme Court, in addressing the issue of patronage

13   dismissals and policymaking positions, stated as follows:

14   It is firmly established that a significant impairment of First

15   Amendment rights must survive exacting scrutiny. *Buckley v.*

16   *Valeo*, 424 U.S. at 64-65; *NAACP v. Alabama*, 357 U.S. 449,

17   460-461 (1958). . . . Thus, encroachment "cannot be justified

18   upon a mere showing of a legitimate state interest." *Kusper v.*

19   *Pontikes*, 414 U.S. at 58. *The interest advanced must be*

20   *paramount, one of vital importance, and the burden is on the*

21   *government to show the existence of such an interest. Buckley v.*

22   *Valeo, supra,* at 94. [Citations omitted.]

23   (*Elrod, supra,* 427 U.S. at p. 362.  Emphasis added.)

24   The Supreme Court in *Elrod, supra,* further stated that "if conditioning the

25   retention of public employment on the employee's support of the in-party is to

26   secure constitutional challenge, *it must further some vital governmental end* by a

27   means that is least restrictive of freedom of belief and association in achieving that

28   ///

1  end, and the benefit gained must outweigh the loss of constitutionally protected

2  rights." (*Elrod, supra*, 427 U.S. at p. 363.  Emphasis added.)

3        In *Johnson v. Multnomah County*, 48 F.3d 420, 427 (9th Cir. 1995), the Ninth

4  Circuit Court of Appeal stated as follows:

5              [T]he County does not have a legitimate interest in covering up

6              mismanagement or corruption and cannot justify retaliation

7              against whistleblowers as a legitimate means of avoiding the

8              disruption that necessarily accompanies such exposure.  Nor are

9              the County's legitimate interests injured if [defendant] was

10             undermined by truthful statements exposing his own

11             wrongdoing.  If we were to hold otherwise, "[s]ome of the most

12             important public employee speech–exposing government

13             corruption, wrongdoing, or incompetence–would be left outside

14             the First Amendment's aegis." [Citations omitted.]

15  (*Johnson v. Multnomah County, supra*, 48 F.3d at p. 427.)

16        In the related case of *Bardzik v. County of Orange*, 605 F.Supp.2d 1076

17  (2009), involving a 1983 action by a Sheriff's lieutenant alleging violation of his

18  free speech rights by the defendants County and Sheriff Carona in retaliation of his

19  support for Bill Hunt during the same political campaign for Sheriff which is the

20  subject of the present lawsuit, the Court, in examining the purpose of the

21  policymaker exception, stated as follows:

22             Although the *Johnson* court was not discussing a case involving

23             the policymaker exception, the court clearly stated that the

24             government "*does not have a legitimate interest in covering up*

25             *mismanagement or corruption.*"  *Id.*  To this Court's knowledge,

26             the Ninth Circuit has not specifically addressed the question of

27             whether the policymaker exception would apply to a situation

28

-8-

1    involving the cover-up of corruption or illegality.  However,

2    when read together, *Elrod* and *Johnson* suggest that the

3    *policymaker exception only applies to legitimate government*

4    *interests, and that covering up corruption is not a legitimate*

5    *government interest.*  Such a cover up would only benefit

6    individual corrupt officials."

7    (*Bardzik, supra*, 605 F.Supp.2d at p. 1085.  Emphasis added.)

8

9    **IV.    DEFENDANTS WILL NOT BE ABLE TO SATISFY THEIR**

10    **BURDEN THAT PLAINTIFF WAS A POLICYMAKER.**

11    It is the government's *burden* to demonstrate an overriding interest in order

12    to validate an encroachment on protected interests, with cases of doubt to be

13    resolved in favor of the employee.  (*Elrod v. Burns* (1976) 427 U.S. 347, 368.)  The

14    United States Supreme Court has repeatedly cautioned against the interference with

15    constitutional rights:

16    "[I]f the government could deny a benefit to a person because of

17    his constitutionally protected speech or associations, his exercise

18    of those freedoms would in effect be penalized and inhibited.

19    This would allow the government to 'produce a result which it

20    could not command directly'.  Such interference with

21    constitutional rights is impermissible."

22    (*Branti vs. Finkel* (1980) 445 U.S. 507, 515.  See also: *Perry vs. Sindermann*

23    (1972) 408 U.S. 593, 597;  *Speiser vs. Randall* (1958) 357 U.S. 513, 526.)

24    In *DiRuzza v. County of Tehama* (9th Cir. 2000) 206 F.3d 1304, 1308, the

25    Ninth Circuit Court of Appeals explained that the United States Supreme Court in

26    *Elrod v. Burns, supra*, 427 U.S. 347, 367-368 carved out a limited exception to the

27    First Amendment protection afforded a public employee who unsuccessfully

28    campaigns against or criticizes his or her employer as follows:

1       "Recognizing that there are some circumstances in which an

2       employee's *First Amendment* rights are not absolute, the

3       Supreme Court has carved out a **narrow** exception to the *First*

4       *Amendment's* protection in cases where the public employee is a

5       policymaker or confidential employee.  This exception was first

6       enunciated in 1976 in *Elrod v. Burns*, where four non-civil

7       service employees of a sheriff's department were fired by the

8       new sheriff because they failed to affiliate themselves with the

9       party of newly elected Sheriff Elrod.  One employee was the

10      Chief Deputy of the Process Division, another a bailiff, and the

11      third a process server; the position of the fourth employee was

12      not described. *Elrod, 427 U.S. at 350-51.* The Supreme Court

13      held that these patronage dismissals were unconstitutional.

14      Justice Brennan's plurality opinion broadly condemned the

15      constitutional evils of the patronage system, but recognized an

16      exception for 'policymaking positions' where 'the employee acts

17      as an **adviser or formulates plans** for the implementation of

18      broad goals. *Elrod, 427 U.S. at 367-68.*"

19 (*DiRuzza*, at p. 1308.;  emphasis added.)

20     In *Thomas v. Carpenter* 881 F.2d 828, 831 (9th Cir. 1989), the Ninth Circuit

21 Court of Appeal, in reversing the dismissal of a civil rights action brought by a

22 Sheriff Lieutenant who ran unsuccessfully against the incumbent Sheriff reiterated

23 that the purpose of the limited exception set forth by *Elrod* that "representative

24 government not be undercut by tactics obstructing the implementation of policies of

25 the new administration, policies presumably sanctioned by the electorate."

26     In *DiRuzza v. County of Tehama* (9th Cir. 2000) 206 F.3d 1304, the Ninth

27 Circuit Court of Appeal ruled that, in determining whether a public employee is a

28 policymaker "the critical inquiry is the job actually performed" (206 F.3d at

1   p.1310), and that "Any categorization based upon job title alone obscures rather

2   than clarifies the nature of the duties actually performed and the constitutional

3   rights at issue." (206 F.3d at p.1309).

4          Pursuant to Defendants' Sheriff's Department's Manual of Rules and

5   Regulations, the duties and responsibilities of Lieutenant/Police Service Chief is

6   defined as follows: "A Lieutenant/Police Services Chief has charge of and

7   *manages* the activities of a major subdivision, facility, or function of the Sheriff-

8   Coroner's Department and acts as the Police Service Chief in a city contracting with

9   the Sheriff-Coroner for police services." (Manual, Title 2, section 3.04.0; emphasis

10  added.)  The Sheriff's Department Rules and Regulations are the "primary" source

11  governing the Orange County Sheriff Department.

12         According to the Sheriff's Department Manual, the duties attendant to the

13  rank of Lieutenant/Police Service Chief are distinguishable from the broader

14  responsibilities of the next highest rank of Captain/Director/Chief Deputy who

15  "plans, organizes, controls and directs the work of a division of the Sheriff-Coroner

16  Department" and, in turn, dramatically more restrictive than the assigned duties and

17  responsibilities for the even higher rank of Assistant Sheriff who, *inter alia*, is

18  "responsible for the fulfillment of all the department's objectives and for the

19  enforcement of all policies, orders, rules and regulations of the Sheriff-Coroner" as

20  well as vested with responsibility to "formulate rules and procedures necessary to

21  carry out the policies and directives of the Sheriff-Coroner."

22         The actual duties of the Chief of Police Services of a contract city such as

23  San Clemente is to manage the delivery of law enforcement services in such cities

24  within the confines of Sheriff Department policies.  Chief of Police Services are

25  responsible for carrying out Sheriff's Department Policy and managing the day to

26  day operational aspect of police services in the City of San Clemente.  Chief of

27  Police Services has no authority to create policy.  The lieutenant assigned to Police

28  ///

1  Services Chief would not have the authority to create new Sheriff Department
2  policies nor to adopt revisions to provisions of the Sheriff's Manual.

3      A Chief of Police Services did not have discretion in determining
4  implementation of policies as he would have no authority to refrain from enforcing
5  Sheriff's Department policy. Hunt as Chief of Police Services would not have the
6  ability to decide which rules and regulations of the Sheriff's Department he was
7  going to enforce against his subordinates.

8      Far from any responsibility of "interpreting" policy, in the event of new
9  policies by the County/Sheriff's Department, Plaintiff as Chief of Police Services
10  would receive instruction as to how it was going to be done and pass it along to the
11  Sergeants or ask for clarification from his Captain.

12      Furthermore, there is no authority for lieutenants assigned to Chief of Police
13  Services to directly advise the Sheriff. A Police Services Chief, similar to any other
14  employee of the Sheriff's Department, would have no discretion to bind the Sheriff
15  to any subject matter regarding law enforcement services, nor otherwise
16  to speak for the Sheriff, unless specifically so authorized or directed through the
17  chain of command.

18      Lastly, lieutenants assigned to Chief of Police Services have no authority to
19  investigate complaints of misconduct alleged against subordinates, nor authority to
20  make disciplinary findings against subordinates and/or the ability to hire or
21  determine the qualifications for hiring deputies.

22

23  **V.    DEFENDANTS CANNOT ESTABLISH QUALIFIED**
24         **IMMUNITY IN THIS CASE.**

25      Defendants will not be able to prove their defense of qualified immunity in
26  this case since it was clearly established in this Circuit that a non-policymaking
27  public employee in a Sheriff's Department is protected from retaliation for the
28  exercise of First Amendment rights. See *DiRuzza v County of Tehama,* 206 F.3d

-12-

1    1304 (9th Cir. 2000). Furthermore, in *Thomas v Carpenter*, 881 F,2d 828, 829 (9th

2    Cir. 1989), involving a First Amendment claim brought under Section 1983 by a

3    Sheriff's Department Lieutenant (who unsuccessfully campaigned for Sheriff

4    against the incumbent Sheriff), the Court found that the Lieutenant was not

5    responsible for developing department policy.

6

7    **VI.    DEFENDANTS CANNOT ESTABLISH THE APPLICATION OF**

8    **THE HATCH ACT IN THIS CASE OR BAR RECOVERY BY**

9    **PLAINTIFF ON ANY REMAINING AFFIRMATIVE**

10    **DEFENSES.**

11    The Hatch Act did not prevent Plaintiff from seeking election as the Sheriff-

12    Coroner of the County of Orange. The provisions of 5 United States Code, section

13    1501 define a state or local officer or employee as subject to the Act provided the

14    individual's "principal employment is in connection with an activity which is

15    financed in whole or part by loans or grants made by the United States or Federal

16    agency". Defendants cannot establish that Plaintiff's position as of Police Services

17    Chief was financed in whole or part by loans or grants made by the United States or

18    Federal agency. Furthermore, Defendants' Notice of Demotion of Plaintiff did not

19    allege any violation of the Hatch Act.

20    During the course of Plaintiff's assignment as Police Services Chief, he did

21    have occasion to sign Grant Agreements for various grant programs through the

22    *State of California Office of Traffic Safety* (i.e., sobriety check points and seatbelt

23    programs), however, it was his understanding that no part of such grant moneys

24    were applied to fund his position as Police Services Chief, as his position was a

25    budgeted position funded by contract between the City of San Clemente and the

26    County of Orange. Defendants will be unable to demonstrate that any of the above

27    Grants funded Plaintiff's position of Police Services Chief. Lastly, the evidence

28    will be undisputed that the office of the office of Sheriff-Coroner in the election of

1  June 6, 2006 was a non-partisan office. "The longstanding policy of the

2  administrative agencies tasked with enforcing the Hatch Act has been to presume

3  that participation in an election for which state law provides for a nonpartisan ballot

4  is not a prohibited activity." (*McEntee v. Merit Systems Protection Board*, 404 F.3d

5  1320, 1325.) Defendants' cannot prevail on any other affirmative defenses alleged

6  in this case.

7

8  **VII.  CONCLUSION.**

9      Based upon the authorities cited herein and the evidence to be introduced at

10  trial, Plaintiff respectfully submits that he will establish violation of 42 U.S.C.

11  Section 1983 where he was unquestionably subjected to retaliation for

12  communicating during a political election campaign as to matters relating to the

13  functioning of government; speech which the United States Supreme Court has

14  declared as occupying the "highest rung of the hierarchy of First Amendment

15  values." (*NAACP v. Claiborne Hardware Co.* 458 U.S. 886, 102 S.Ct. 3409, 3426.)

16  Defendants' cannot prevail on any affirmative defenses.

17

18  Dated: October 2 , 2009.      SILVER, HADDEN, SILVER, WEXLER &
      LEVINE

19

20        By: _____
          RICHARD A. LEVINE
      Attorneys for Plaintiff, WILLIAM J. HUNT

21

22

23  00717-pld.wpd

24

25

26

27

28

PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1428 Second Street, P.O. Box 2161, Santa Monica, California 90407-2161.

     On **October 2, 2009,** I served the foregoing document described as **PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

<u>For Defendants, COUNTY OF ORANGE and MICHAEL S. CARONA:</u>

| | |
|---|---|
| Martin J. Mayer, Esq. | Norman J. Watkins, Esq. |
| **Kimberly Hall Barlow, Esq.** | S. Frank Harrell, Esq. |
| Paul R. Coble, Esq. | Shannon L. Gustafson, Esq. |
| JONES & MAYER | LYNBERG & WATKINS |
| 3777 North Harbor Boulevard | 333 City Boulevard West, Suite 640 |
| Fullerton, CA  92835 | Orange, CA  92868-5915 |
| (714) 446-1400  Telephone | (714) 937-1010  Telephone |
| (714) 446-1448  Fax | (714) 937-1003  Fax |

[X]    **[By Overnight Mail - Federal Express]**

     I delivered said documents to an authorized courier or driver authorized to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served for delivery on the next business day.

     Executed on **October 2, 2009**, at Santa Monica, California.

     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.


MELISA CLENDENEN

PLAINTIFF WILLIAM J. HUNT'S TRIAL BRIEF